IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BRIAN HEALY, et al.,

Plaintiffs,

v.

JOSE M. MARTÍNEZ RIVERA,

Defendants.

CIVIL NO. 18-1754 (JAG)

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

Plaintiffs Brian Healy ("Healy"), Bruce Lee Andrade ("Lee Andrade") and Circo Group, LLC, ("Circo Group" collectively "Plaintiffs") brought the present suit against Defendant José M. Martínez Rivera ("Defendant" or "Martínez") seeking damages for malicious prosecution and libel. Plaintiffs also requested a finding of temerity and attorney's fees, expenses and punitive damages. Plaintiffs' claims arose from a civil case Martínez filed against them in the Puerto Rico Court of First Instance, which was ultimately voluntarily dismissed.

Plaintiffs were unable to effect service of process personally and Defendant was served by publication on February 10 and 13, 2020 in Texas and Puerto Rico. Defendant failed to respond or otherwise plead to the Complaint. On February 2, 2021, the Court entered default against Defendant. (Docket No. 29).

On June 3, 2021, Plaintiffs petitioned for a default judgment, which the Court granted in part. (Docket Nos. 38 and 44). The case was then referred to the undersigned for a damages hearing and Report and Recommendation. (Id.).

On May 5, 2022, the damages hearing was held remotely. (Docket No. 58). The

Court heard testimonies from Plaintiffs Healy and Lee Andrade, as well as expert witness Vicente Feliciano ("Feliciano").

The following exhibits were entered into evidence, all of which were identified by Plaintiff Healy and Feliciano:

Exhibit 1. Complaint filed in the Court of First Instance, San Juan part, Civil No. KPE2014-0885.

Exhibit 2. *Primera Hora* news article dated April 22, 2014.

Exhibit 3. *El Nuevo Día* news article.

Exhibit 5. Judgment issued by the Court of First Instance, San Juan part, in Civil No. KPE2014-0885.

Exhibit 6. Ferraiouli Law Firm billings (list).

Exhibit 7. Letter to Advantage Business Consulting signed by Attorney Edgar Sánchez dated August 9, 2021.

Exhibit 8. Several invoices from Agustín Collazo Law Offices.

Exhibit 10. Invoice from All Texas Process Servers dated March 4, 2019.

Exhibit 10-A. Texas Server Proof of Service documents (summons returned unexecuted).

Exhibit 11. Affidavit of Tom Morin for publishing of edict in the *Daily Court Review* dated February 10, 2020.

Exhibit 11-A. Proof of publishing of edict in the *Daily Court Review* dated February 10, 2020.

Exhibit 12. Invoice for publishing of edict in *El Vocero* dated February 13, 2020.

Exhibit 12-A. Affidavit of Mayda Rodríguez and proof of publishing of edict in *El Vocero* dated February 13, 2020.

Exhibit 13. Invoice from Advantage Business Consulting dated April 1, 2022, for $2,000 and showing a balance of $1,000[1].

Exhibit 13-A. Feliciano's *Curriculum Vitae.*

Exhibit 13-B. Expert Report by Feliciano of Advantage Business Consulting dated July 2021.

Exhibit 14. USPS certified mail tracking for letter sent to Houston, Texas dated October 19, 2020.

Exhibit 14-A. Certified mail stub for letter addressed to José Martínez in Houston, Texas.

Exhibit 15. Marsh Saldaña insurance proposal for Circo Group dated August 14, 2018.

## LEGAL STANDARD

Rule 55 of Fed. R. Civ. P. reads in pertinent part:

(a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

(b) Entering a Default Judgment.........
        (2) By the Court. In all other cases, the party must apply to the court for a   default judgment.  A default judgment may be entered against a

---

[1] Pending at the time of the hearing was the submission of an updated invoice for Feliciano's services, which was submitted by Plaintiffs on May 25, 2022.   (Docket No. 62).   The updated invoice from Advantage Business Consulting is also dated April 1, 2022, but now has a zero-balance due.   This invoice is made to form a part of Exhibit 13.

_____

minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the  application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Fed. R. Civ. P. 55.

The Federal Rules of Civil Procedure allow the Court to enter default when, as here, a party against whom a judgment is sought has failed to plead or otherwise defend. Following the entry of default, a district court can enter a final default judgment without requiring further proof of damages if the claim is for a "sum certain." See 10 Moore's Federal Practice ¶55.22[1] (2002) ("In cases where the court has entered default judgment and the claim is for a sum certain, the court can enter the default judgment for the amount stated in the complaint."); see also KPS & Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1 (1st Cir. 2003).   However, when the amount is in dispute or is not readily ascertainable from the pleadings, a hearing may be required to set damages.   See Fed.R.Civ.P. 55(b)(2); Ortíz-González v. Fonovisa, 277 F.3d 59, 64 (1st Cir.2002).

Defendant failed to answer the Complaint.   Thus, default was entered against him. The result of his failure to answer is that all the allegations contained in the Complaint, except the amount of damages, are deemed admitted as true. Fed.R.Civ.P. 8(b)(6); Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir. 1985).

Plaintiffs included in their Complaint claims for malicious prosecution, libel and temerity, and seek damages as a result thereof.   They also requested attorney's fees, costs and punitive damages.   For this reason, the matter was referred to this Magistrate Judge for an evidentiary hearing to ascertain these damages.

## FINDINGS OF FACT

Pursuant to the allegations in the Complaint, which stand uncontested, the following findings of fact are made:

1.   Circo Group, LLC was a duly registered Limited Liability Company within the Commonwealth of Puerto Rico, whose holdings included Circo Bar, a prominent gay bar located at #650 Condado Street, in San Juan, P.R. 00907.

2.   Circo Bar hosted several international events throughout its nine (9) year existence, and public attendance during a regular week reached approximately three thousand (3,000) guests.

3.   Plaintiffs Healy and Lee Andrade were Managers/Supervisors at Circo Bar and Puerto Rico residents at the time the present Complaint was filed.

4.   Defendant Martínez was hired as a Bartender at Circo Bar in October 2013 and signed an employment agreement.   His duties included keeping his work area clean, serving drinks, keeping inventory, charging clients for the prepared drinks, tallying the cash register at closing and keeping a record of the transactions performed.

5.  Martínez received and signed a copy of the rules regarding sexual harassment and other applicable rules of the establishment at the beginning of his employment at Circo Bar.

6.  Martínez worked at Circo Bar for about four (4) months.

7.  On February 6, 2014, Martínez became intoxicated while on his shift, and voluntarily resigned after the bar's security personnel and other employees stopped him from violently attacking Plaintiff Lee Andrade, one of his supervisors.

8.  Martínez voluntarily resigned from his job on that day, repeating the phrase "I fucking quit" multiple times in front of other employees.

9.  Defendant Martínez joined Jirafa Verde, one of Circo Bar's direct competitors, within days after resigning.  Shortly thereafter, Martínez moved to Houston, Texas.

10.  On April 2, 2014, Martínez brought suit against Plaintiffs in the San Juan Court of First Instance, number KPE2014-0885, claiming unjustified dismissal, sexual harassment, unpaid salaries, and damages (the "Martínez state court case"). Exhibit 1.  Martínez also claimed being publicly humiliated and harassed by Healy.

11.  Martínez delivered a copy to reporter Mariana Cobián of *El Nuevo Día* and *Primera Hora*, newspapers with island-wide circulation, prior to serving the lawsuit papers on Circo Group and the individual Plaintiffs (defendants

in that case).

12.     Two articles were published bad-mouthing Plaintiffs and Circo Bar, namely, one in *Primera Hora* and a second one in *El Nuevo Día*.   Plaintiffs contend these two articles caused irreparable damage to their image and reputation. Exhibits 2 and 3.

13.     Defendant Martínez conspired with Alexis Colón ("Colón") to file almost the exact same lawsuit against Defendants (the "Colón state court case") on May 27, 2014.

14.     Martínez and Colón were both represented by the same lawyers in their respective state court cases against Plaintiffs.[2]

15.     The Colón state court case was dismissed by the state court in August 2015. The Martínez state court case was voluntarily dismissed by the state court on March 18, 2018. Exhibit 5.

16.     Martínez attempted to recruit other employees, after leaving Circo Bar, to file similar lawsuits with the same claims and even considered forming a union against Plaintiffs, an idea which was unsuccessful.

17.     Due to the filing of the Martínez state court case, Circo Group claimed in the instant case loss of business revenue, legal expenses, and damages for a tarnished reputation within the community as a result of Defendant's

---

[2] Plaintiffs herein also sued Colón in this court for malicious prosecution and libel, and sought to recover damages, costs and attorney's fees. Similarly, plaintiffs in that case also pursued a finding regarding Colón's temerity (the "Colón federal case").  See Civil No. 16-2498 (CCC).

_____

actions.

18.    Healy claims damages in the case at bar for mental and emotional distress
he suffered as a result of the state court case and seeks to recoup his legal
expenses.

19.    Lee Andrade claims damages in the instant case for mental and emotional
distress.

The following additional findings of fact are made pursuant to the uncontested
testimonies presented during the damages hearing held on May 5, 2022:

1.    Plaintiff Healy is a businessman who has been living in Puerto Rico for over
20 years, arriving in Puerto Rico in 1999 as a result of a business venture.
One of his businesses was Circo Bar.

2.    Circo Bar was a bar/nightclub located in Santurce, Puerto Rico geared
mainly towards the LGBTQ market, but had a mixed crowd of alternative
and other clients. It was the largest operator of its kind in the Caribbean.

3.    In 2014, Martínez filed the state court case against Healy, Lee Andrade and
Circo Group.

4.    Circo Bar is closed today as a result of the state court case filed by Martínez.

5.    Martínez worked for approximately five (5) months at Circo Bar before he
filed the state court case.

6.    Plaintiffs learned about the state court case via a story that was published
in the newspapers before they were served with the court documents.

7.  Healy and Circo Group have spent $109,468.00 in legal fees between the state court case and the present case.   Exhibit 7.

8.  The Martínez state court case was ultimately voluntarily dismissed with prejudice, and Plaintiffs then filed the present case against Martínez.

9.  Defendant Martínez' last known address is 1885 El Paseo Street, Apt. 33207, Houston, Texas 77504.   Exhibit 14-A.   Martínez told the process server, who attempted to serve him in this case in Houston, over the telephone that he was moving to the country of Colombia for a job.   Exhibit 10-A.

10. Service by publication was effected via newspaper in Houston, Texas and San Juan, Puerto Rico because Martínez refused to be personally served. Exhibits 11, 11-A, 12 and 12-A.

11. Healy believes Martínez fled to Houston and later to Colombia to avoid the present case.

12. Martínez was additionally facing a possible criminal prosecution due to perjury in the state court case, as he contradicted himself and offered different answers to what he had previously answered in written discovery. His intent was to get money, as he thought he would be paid a settlement quickly.

13. The Martínez state court case created complete turmoil at Circo Bar.   All of a sudden, Circo Bar was perceived as a business that preyed upon its

employees. It changed the dynamic among the management and the employees and made management to be pariahs.

14. Healy was told that people would not patronize the business because he harassed employees and Circo Bar lost clients who went elsewhere.

15. The business also suffered because no improvements could be made to the business since all the money was instead used to pay for the defense of the state court case. Additional money was spent on hiring consultants on human resources.

16. As a result of the Martínez case, Plaintiff Healy was forced to hire an attorney to represent Circo Bar before the National Labor Relations Board ("NLRB") due to efforts by employees to unionize. Although the eventual vote to unionize was unsuccessful, more attorney's fees were spent on this issue that could also have been spent on business improvements. Exhibit 8.

17. Insurance coverage was also affected, insofar as Circo Group attempted to get employer liability coverage and was denied coverage by three major carriers. Only one unknown carrier offered a quote which was extremely expensive and had a deductible of $75,000.00. Exhibit 15.

18. Circo Bar had a harassment policy which Martínez was aware of since he signed a copy and was given the employee manual before beginning to work at Circo Bar.

19. Martínez never told Circo Bar's Office Manager and Administrator Yolanda Pérez, who was in charge of human resources, that he was being harassed. Circo Bar's management learned about the lawsuit through the newspaper articles.

20. Peak times to buy a club are between four (4) and five (5) years after opening, which Circo Bar had reached by the time it was sued by Martínez. The club was very successful, with approximately 1,000 clients per weekend, so it was an attractive business venture at that time.

21. Healy had offers to buy the club which fizzled due to the state court case's allegations. In particular, a Spaniard was interested in buying the key to the business and offered between $1.2 and 1.5 million dollars.   That opportunity and others disappeared due to Martínez' actions.

22. Healy stated no one wants to purchase a business with a pending harassment lawsuit.   It is like a cancer and affects potential buyers because they believe there may be other harassment cases.

23. The case devastated Healy.   Moneywise, he could have been bankrupt.

24. Healthwise, the case caused Healy depression, and he was forced to take antidepressants.

25. Additionally, Healy suffered from alopecia and had patchy hair growth areas throughout his body which were caused by stress.

26. Healy's ability to connect with people was also affected, insofar as he is now

Brian Healy, et al., v. José M. Martínez Rivera
Civil No. 18-1754 (JAG)
Report and Recommendation
Page 12

distrustful of people.

27. Martínez sued Healy and the club out of greed and created much turmoil, affecting the business and himself personally.

28. Plaintiffs became aware of the state court case through the papers three (3) weeks after the case was filed.   Martínez purposely delayed serving the lawsuit to make the allegations public via the newspapers.   Circo Bar was open 24/7 and there were always managers at the bar who could have been served.

29. Once Plaintiffs were served with process in the state court case, Martínez' lawyers called Plaintiffs' lawyers several times early on, demanding how much Healy and Circo Group were going to pay to settle the case.   Martínez' intent was to get some easy money via a quick settlement.

30. In the end, Healy gained a bad reputation within the gay community, seen as a penny pinching or avaricious "gringo"[3] who came to Puerto Rico to abuse the locals.

31. Healy's livelihood was also affected, insofar as he is a businessman who needs other licenses for other businesses, and a black mark on his reputation could be used as a reason to deny a petition for a future license.

32. Healy requested to be compensated for the losses he incurred, and the

---

[3] Slang used to refer to Americans who come to Puerto Rico from the mainland United States, sometimes used in a derogatory fashion.

emotional and physical suffering he endured.

33. Healy also wants to send a message to future Plaintiffs, that a case must have merit to be filed.  Filing cases such as the Martínez state case, which was an empty claim filed for quick money, detracts from real, meritorious harassment cases.

34. Circo Bar ultimately closed, and as such, the damages exceeded those included in Feliciano's expert report.

35. Plaintiff Lee Andrade is single and has been residing in Jacksonville, Florida for approximately one (1) year.

36. Lee Andrade was the Manager at Circo Bar.

37. As Circo Bar Manager, he had keys to the establishment and was responsible for opening and closing, security, equipment maintenance and the DJ, among others.

38. Lee Andrade stated that the allegations made against him in the Martínez state court case were false, made up, and untrue.

39. Lee Andrade took some days off, after he learned about the case that was filed against him, while the investigation took place.

40. Lee Andrade suffered physically and economically as a result of the Martínez state court case.

41. Martínez attacked Lee Andrade the night that he quit.  Lee Andrade had to go to the hospital to get x-rays done because he had chest pain.

42. Lee Andrade became depressed and was forced to take medication for his depression, which he had never needed before.

43. Lee Andrade also now suffers from Central Cerous Chorioretinopathy ("CSC"),[4] a progressive eye condition that causes blackened and blurry vision and wavy lines. Because of this condition, his eyeglasses prescription is difficult to fulfill, and he has headaches every day. He has spent about $700.00 treating this condition.

44. Lee Andrade used to be happy and outgoing, hardworking and trustworthy before the Martínez state court case was filed. After the case was filed, he was forced to change his normal ways and became another person altogether to protect himself. He was unable to be in rooms alone with employees while at Circo Bar.

45. Lee Andrade's name and reputation in the community were affected. He now has to watch what he says and does, and feels people look at him differently after the state court case was filed and made public. The case appears linked to the search when his name is googled.

46. Lee Andrade does not currently work in the front of a commercial establishment, like he did at Circo Bar. Rather, he now works as a cook, on the back of a restaurant, where he does not have to deal with people.

---

[4] The American Society of Retina Specialists indicates that Central Cerous Chorioretinopathy condition in which fluid accumulates under the retina, causing a serous (fluid-filled) detachment and vision loss. See https://www.Aars.org/patients/retinal-diseases/21/central-serous-chorioretinopathy.

47. Lee Andrade wishes to be compensated for his emotional distress.

48. Feliciano is an economist with residence and offices in San Juan, Puerto Rico.   Exhibit 13-A.   He was retained by Plaintiffs to provide an analysis of the losses of Circo Group as a result of the events of this case.   Exhibit 13-B.

49.  Feliciano's report has two parts. Part one involves taking past income tax returns to craft the business valuation.   The second part is the calculation of the cost of the legal process, for which he used the lawyers' invoices.

50. Page 1 of Feliciano's report contains a table of the total loss estimate.   The business loss estimate is $121,701.00 and the legal expenses are $109,468.00. The total loss comes to $231,168.00. Exhibit 13-B.

51. Feliciano testified that the money spent on attorney's fees in the state court case could have been earnings for the business had Circo Group not been obligated to pay for such fees.

52. Feliciano also testified that the $121,701.00 figure was the total business loss Circo Group suffered as a result of the Martínez and Colón's state court cases.   He further testified that how said loss is divided and apportioned was not his area of expertise.

**CONCLUSIONS OF LAW**

Co-Plaintiff Circo Group is incorporated and had its principal place of business in Puerto Rico, and it owned Circo Bar.   Plaintiffs Healy and Lee were residents of and

domiciled in Puerto Rico, at the time the Complaint was filed.   Defendant Martínez resided in Texas.   The amount in controversy, excluding costs and fees, exceeds $75,000.00. It is black letter law that a federal court sitting in diversity jurisdiction must apply local law to all substantive matters.   See Erie R.R.Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938).

### A. Malicious Prosecution.

Malicious prosecution is the unjustified use of legal proceedings and occurs when a criminal action is filed maliciously and without probable cause and provokes damages. Segarra Jiménez v. Banco Popular, Inc., 421 F. Supp. 2d 452, 459 (D.P.R. 2006).   The Supreme Court of Puerto Rico has held that an action for malicious prosecution based on a prior civil suit generally cannot lie under Article 1802 of the Puerto Rico Civil Code. See Giménez Alvarez v. Silén Maldonado, 131 D.P.R. 91, 96 (1992); Commonwealth Loan Corp. v. García Montañez, 96 D.P.R. 773, 774 (1968). The Supreme Court has recognized, however, that Article 1802 may adequately support an action for malicious prosecution based on a prior civil action when the facts of the case reveal more than mere negligence. Microsoft Corp. v. Computer Warehouse, 83 F. Supp. 2d 256, 260 (D.P.R. 2000).

The case of Fonseca v. Oyola, 77 D.P.R. 525 (1954) set the standard and formally recognized a cause of action for bringing a malicious prosecution claim for prior civil cases under Puerto Rico law.   It held that only in extreme circumstances may Puerto Rico tort Article 1802 support a claim for damages stemming from malicious prosecution based on the filing of a prior civil case.   Id.; see also Berrios v. Int'l Gen. Elec., 88 D.P.R. 109

(1963), Boschette v. Bach, 916 F. Supp. 91, 96 (D.P.R. 1996); Reyes-Cardona v. J.C. Penney Co., 694 F.2d 894, 897 (1st Cir. 1982) (malicious prosecution under Puerto Rico law "require[es] a showing of recklessness, bad faith, intent to cause harm, gross error, abuse of the right to bring a suit or the like"); Casiano Torres v. Don King Prods., 598 F. Supp. 2d 245, 248 (D.P.R. 2009) ("merely showing that a party has instituted a suit negligently is insufficient to support a malicious prosecution action").

For this reason, the Court must examine the facts on both sides to determine whether the extraordinary circumstances that Fonseca requires were met here.   As the Court already pointed out however, because Defendant refused to appear and defend himself, the entry of default has short-circuited this analysis.   Instead of making a fact bound, two-sided inquiry, the Court must take the pleadings, which are already considered true, and the testimonies heard at the hearing, which stand uncontested and simply determine whether Plaintiffs have shown a "plausible entitlement to relief"[5] as to the requirements for malicious prosecution, which include: "(1) that a civil action was instituted or a criminal prosecution filed by defendant or at his request; (2) that the prosecution ended favorably to the plaintiff; (3) that it was instituted maliciously and without probable cause; and (4) that plaintiff sustained damages thereby."   Fonseca, 77 D.P.R. at 528, Giménez Alvarez, 131 D.P.R. at 96.

     1.   Prior civil lawsuit.

The first element, that there was a prior lawsuit, is easily met.   Plaintiffs have

---

[5]   See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1967-69 (2007).

provided evidence that Martínez filed a civil suit against them in the San Juan Court of First Instance in April 2014, Case number KPE2014-0885.    Exhibit 1.

  2. <u>Prosecution ended favorably.</u>

  As to the second element, Plaintiffs have evidenced that the state court case was voluntarily dismissed by Martínez, which they aver amounts to a favorable ending. Exhibit 5.   As this Court candidly pointed out in the Colón federal case, however, how a case was dismissed influences whether it ended favorably.   While dismissal due to a dispositive motion meets the "ended favorably" requirement,   procedural or stipulated dismissals do not necessarily do so.   <u>Casiano Torres</u>, 598 F. Supp. 2d at 248-49.

  In the case at bar, Plaintiffs argue that the voluntary dismissal occurred due to Defendant repeatedly perjuring himself during his deposition, to the point that he was on the verge of being criminally accused.   In other words, Defendant was forced to request voluntary dismissal to avoid a criminal prosecution caused by his actions, which shows automatic bad faith and that the case was improperly filed.

  The Court finds that the second element is satisfied based on the above facts. While the voluntary dismissal was not on the merits, it suffices to show to the Court that Defendant acted to protect himself when he was on the verge of a criminal prosecution due to his own actions.   Defendant would not have voluntarily dismissed the case had the state court suit been brought due to a real grievance.

  3. <u>Malicious and without probable cause.</u>

  To prove the element of malice, Plaintiffs contend Defendant filed a "frivolous,

unfounded and defamatory Complaint and lawsuit against Plaintiffs, "without worthy cause, maliciously, and for an inappropriate reason forcing them to incur in legal expenses and defend themselves and their business that is their livelihood".   (Docket No. 2, ¶¶48 and 49). Plaintiffs established at the hearing that Defendant resigned from his employment at Circo Bar after becoming intoxicated and became aggressive with the staff and with Plaintiff Lee Andrade.   His actions caused Lee Andrade to go to the hospital to attend to his injuries, some of which persist to this day.   They further established that Martínez was cognizant that his behavior was not appropriate at his workplace because he had been given a copy of the employee manual and signed it when he began working at Circo Bar.   Defendant then zealously pursued the state court case against Plaintiffs and was ultimately forced to voluntarily dismiss that case when he faced a possible criminal prosecution.

Additionally, Martínez conspired with Colón to harm Plaintiffs including the leaking of the complaint to the press, before serving Plaintiffs, which clearly showed his state of mind, which was improper and abusive.   Judicial notice is taken of the outcome of the Colón federal case in this Court, where default judgment was also entered against defendant Colón, damages for loss of business were awarded to Circo Group, and damages for mental and emotional pain and suffering, as well as attorney's fees, were awarded to Plaintiffs Healy and Lee Andrade due to Colón's frivolous state lawsuit, which was instigated by Martínez.   See Civil No. 16-2498 (CCC).   Thus, the undersigned finds that Martínez' actions in the present case were made for financial gain, and with the desire to

ruin Plaintiffs' reputations. All these facts stand uncontested due to Defendant's own actions in choosing not to appear in this case.

As previously stated, however, Plaintiffs must show the extraordinary circumstances that Fonseca and its progeny require, to wit, Defendant's "recklessness, bad faith, intent to cause harm, gross error, abuse of the right to bring a suit, or the like." Reyes-Cardona, 694 F.2d at 897; Fonseca, 77 D.P.R. 525. The undersigned finds that, pursuant to the testimonies heard during the damages hearing, Plaintiffs have properly established malice based on Defendant's own actions mentioned before, in addition to bad-mouthing Plaintiffs, leaking the story to the press before service was effected on Plaintiffs, repeatedly harassing counsel to demand an early settlement amount, perjuring himself to the point of almost being criminally accused, conspiring with others to sue Plaintiffs, dragging Circo Group into an NLRB's union dispute, moving to avoid the present case and hiding from the process server. These actions demonstrate that Defendant Martínez' actions in filing the state court case were done with bad faith, and with reckless intent to harm Plaintiffs.

For the above reasons, the undersigned finds that the malice element was also met in the instant case.

4. Damages.

Plaintiffs have also proven the fourth element, damages. As to Circo Group, Plaintiff Healy testified that, after Martínez leaked the story to the newspapers and was formally served, Circo Bar became known as a place where management preyed upon its

employees, and the internal dynamic between management and the employees changed. The business was also hurt as no money could be invested back into the business because earnings had to be spent on defending the state court cases (the Martínez state case and the Colón state case), as well as in the employees' unionization efforts before the NLRB. Efforts to sell the club also fell through, as no one wanted to buy a business with the cloud of a sexual harassment suit hanging over its head.   Plaintiffs' reputations were tarnished, and Circo Bar ultimately closed.   Plaintiffs' management consultant expert, Feliciano, valued Circo Group's total loss at $174,798.00, divided as $121,701.00 for business loss estimate and $109,468.00 as direct legal expenses.   Exhibit 13-B.

In sum, all the four (4) elements of a claim for malicious prosecution have been met by Plaintiffs in the present case. Therefore, it is recommended to the Court to make a finding to that effect.

However, it should be noted that the Court has already awarded Circo damages for loss of business in the Colón federal case, Civil No. 16-2498 (CCC), which stems from essentially the same operative facts of the instant case.

In that case, Colón was a hired to work as a "bar back" at Circo Bar in December 2012 and was removed from his job in November 2013 after receiving various warnings due to violations of the employment conditions established in his contract agreement. Colón sued Healy, Lee Andrade and Circo Group in state court on May 27, 2014, a little over a month after Martínez filed his own case against Plaintiffs in state court.[6]   Colón's

---

[6] Plaintiff Healy testified that Martínez tried to lobby other Circo Bar employees to file similar suits against Circo Bar.

state case alleged unjustified dismissal, harassment, lost wages and damages, and was ultimately dismissed due to Colón's failure to abide by the Court's orders.

After said dismissal, Circo Group and Plaintiffs herein sued Colón in this court, Civil No. 16-2498 (CCC), claiming loss of business and reputation for Circo Group, and mental and emotional damages for Healy and Lee Andrade.   Healy and Lee Andrade also sought costs and attorney's fees spent in litigating the state case, and a ruling on temerity. On March 4 and 6, 2019, a default hearing on damages was held before another Magistrate Judge.

During that hearing, Feliciano, Plaintiffs' management consultant expert, valued Circo Group's total loss at $174,798.00, divided as $121,701.00 for business loss estimate and $53,097.00 as direct legal expenses.   The Court also awarded Healy $10,000.00 for mental and emotional damages, Lee Andrade $18,000.00 for mental and emotional damages, and Circo Group $160,778.00 for loss of business and legal expenses.[7]

Returning to the present case, Plaintiffs aver that Martínez, and Colón conspired to harm them by each filing a separate lawsuit against them in state court and a cursory look at both federal Complaints finds them to be remarkably similar.   The only difference is that the present case includes a cause of action for libel which the Colón federal case did not.

---

The undersigned finds that the Colón state court case was filed as a result of this campaign led by Martínez against Plaintiffs.

[7] In its Judgment adopting in part the Report and Recommendation issued by the Magistrate Judge, the Court fine-tuned the amount of attorney's fees and found they were less than what the expert had indicated.   For this reason, the presiding Judge reduced only the amount of attorney's fees.   The Court left the award for business loss of $121,701.00 untouched but awarded the sum to Circo Group instead of Healy.

A review of both expert reports by Feliciano, shows that they are identical, prepared by the same accountant, but with a different date.   Both expert reports claim the same amount for loss of business to Circo Group, to wit $121,701. 00.   An additional difference lies in the amount of attorney's fees.   However, the loss of the business figure in both reports for Circo Group remains identical, as both took the same span of time into consideration to come to that determination.   Both reports conclude: "[a]s illustrated in the previous table the difference between two estimates is equal to the business loss that could be attributed to the false claims made by [Mr. Colón Delgado (in the Colón federal case) ], Mr. José Martínez Rivera in the present case].   Therefore, the loss of business value is estimated at $121,701".   (See Civil No. 16-2498 (CCC), Docket No. 35, Exhibit 27, p. 7; and Docket No. 54, Exhibit 13-B, p. 7 of the present case).

Feliciano made no distinction between the Colón federal case and the present case, and how the loss of business from two distinct but almost contemporaneous events could be separated for purposes of apportioning Circo Group's loss of business revenue. Mindful of this issue, the undersigned asked Feliciano as to this matter during the damages hearing.   Feliciano testified that Circo Group's total loss of business was valued at $121,701.00, but that he could not adjudicate the loss to any particular party because that was not his expertise.   In other words, Feliciano failed to specify the amount in which Colón and Martínez were each responsible for causing the total amount for the business loss claimed by Circo Group.

Having already been compensated for Circo Group's loss of business in the Colón

federal case, Plaintiffs failed to explain during the damages hearing how and why the Court should award them the same amount for the same loss again in the instant case. Although Feliciano indicated that he was unsure whether Plaintiffs herein had been able to collect on the complete damages awarded in the Colón federal case, the fact remains that no evidence was presented in this case, via documents or testimony, of what amount of the $121,701.00 figure corresponded to the damages caused by Martínez and what amount corresponded to Colón. Plaintiffs provided no reason as to why the Court should award them a second time the same amount for Circo Group's loss. Plaintiffs' counsel also failed to address this matter during the damages hearing and did not provide any evidence as to whether Plaintiffs were able to recover from Colón in the Colón case the loss amount awarded to Circo Group in said federal case. Thus, it is evident that this Court has already fully compensated Plaintiffs for Circo Group's loss of business in the Colón federal case, and another award for the exact amount (calculated by Feliciano for the same loss in this case) would be a second bite at the apple. For this reason, it is recommended that no damages be awarded to Plaintiff Circo Group for business loss in the instant case.

However, it is recommended that legal expenses be awarded to Circo Group in litigating the state case brought by Martínez.[8] Feliciano testified that those damages amounted to $109,468.00 and included them in his expert report. Exhibit 13-B. This figure already included fees for process servers, service by publication, filing fee and

---

[8] The payments made to attorney Sánchez include fees for both the Martínez state court case and the present case. As the Court will an award for attorney's fees as a whole, see section C, *infra*, there is no need to make a distinction between the two.

translations.   Id. at pp. 17-19. The evidence showed that these were divided between billings from the Ferraiuoli Law Firm, Attorney Sánchez and Agustín Collazo Law Offices. Exhibits 6, 7 and 8.   Billings for Circo Group totaled $64,969.00[9] and bills for Healy totaled $44,500.00   Thus, it is recommended to the Court to grant the attorney's fee expenses for the full amount of $109,469.00. To this figure, the Court recommends adding the $2,000.00 for Feliciano's expert fees, for a total of $111,469.00 in fees. Exhibit 13 (as amended) at Docket No. 62, Exhibit 1.   This additional $2,000.00 should be awarded to Circo Group, insofar as the report dealt with loss of business to Circo Bar. No invoices were submitted by Plaintiff Lee Andrade.

As for the individual Plaintiffs, Healy testified that he was forced to take anti-depressants and suffered from alopecia and patchy hair growths due to the stress caused by the Martínez case and the closing of Circo Bar. His ability to connect with people has been lost because he is now mistrustful of others. The fear of a looming bankruptcy and that his other licenses could be revoked or denied was also present.

An emotional Lee Andrade testified that he used to be an outgoing and cheerful person, but the state court changed him profoundly. Like Healy, he testified that he now mistrusts people and is constantly worrying over how he speaks and treats others. He was forced to go to the emergency room to treat the injuries caused by Defendant Martínez' attack and developed CSC, a progressive eye condition that causes wavy, blurry lines and blackened vision.   Lee Andrade declared he spent approximately $700.00 to treat this

---

[9] Feliciano's math was off by $1.00.

condition but provided no evidence for it besides his testimony. He also had to take anti-depressants and stated he had never needed them before.   He now prefers working out of a kitchen in the back of a restaurant where he does not have to deal with the public.

In light of Plaintiffs Healy and Lee Andrade's testimonies, it is recommended to the Court that Healy be awarded $20,000.00 and Lee Andrade $25,000.00 for mental and emotional pain and suffering for the malicious prosecution claim.

### B. Libel.

In Puerto Rico the tort of defamation can be either intentional or negligent, depending on whether the defamed is a private or public figure, and can come in the form of slander or libel.   See generally, Ojeda v. El Vocero de P.R., 137 D.P.R. 315 (1994). Libel is defamation that comes in the written form, slander takes place when the defamation is oral.   See P.R. Laws Ann. tit. 32, §§ 3141 and 3143; Sociedad de Gananciales v. El Vocero de P.R., 135 D.P.R. 122, 126 (1994); Segarra Jiménez, 421 F. Supp. 2d at 458.

A private citizen who seeks redress for defamation, whether written or oral, must establish: "(1) that information that is false; (2) was negligently published, with the result that (3) the defamed person suffered real damages." Segarra Jiménez, 421 F. Supp.2d at 458; Comité Fiestas de la Calle San Sebastián, Inc. v. Cruz, 207 F. Supp. 3d 129, 146 (D.P.R. 2016); Pérez Rosado v. El Vocero de P.R., 149 D.P.R. 427, 442 (1999).   The publication element is satisfied when the false and defamatory information has been communicated to a third party, meaning someone other than the speaker and the

defamed. See Porto y Siurano v. Bentley P.R., Inc., 132 D.P.R. 331, 346-347 (1992).   As to damages, the Puerto Rico Supreme Court has stated that the purpose of a defamation claim is to provide a compensation for the damage inflicted on the reputation and good name of the injured party.   Sociedad de Gananciales v. El Vocero de P.R., 135 D.P.R. at 127.

Defendant Martínez made libelous and defamatory remarks against Plaintiffs accusing them of sexual harassment, illicit employment practices, and wrongful termination.   The falsehood of these remarks is uncontested.   First, Defendant Martínez failed to appear in this case. Second, Martínez was forced to voluntarily dismiss the state court case which also militates in favor of the remarks being false. Thus, Plaintiffs' testimonies that the remarks were false are admitted as true.

The publishing element is likewise met, as the information appeared at Defendant's own behest in *Primera Hora* and *El Nuevo Día* newspapers.   Exhibits 2 and 3.   Defendant further tried, without success, to sue Plaintiffs in state court based on those remarks and failed.   The undersigned finds the remarks were made with the intent to destroy Plaintiffs' reputations in the business community in Puerto Rico, and in fact, caused Plaintiffs to be unable to renew their insurance policy and ultimately close the business.

Finally, damages were also experienced as Plaintiffs Healy and Lee Andrade suffered mental and emotional damages as discussed above, and Circo Group suffered a business reduction with the bad press it received, their regular clientele dwindled, and its

management was labeled as mistreating and harassing its employees. Additionally, Circo Group had trouble finding a reasonably priced insurance policy, prospective buyers of the club fizzled and ultimately Circo Bar was closed down.

In view of the foregoing, it is recommended to the Court to grant an additional award of $20,000.00 each to Plaintiffs Healy and Lee Andrade in light of Defendant Martínez' defamatory actions.

### C.  Costs, attorney's fees and punitive damages.

Plaintiffs also move for an award of attorney's fees, costs and punitive damages for temerity, and posit that Defendant has been obstinate during the litigation.   The general rule is that a prevailing party in a case must bear its own attorney's fees and may not collect them from the losing party unless there is an enforceable contract or a statutory provision providing for attorney's fees. See Buckhannon v. West Va. Dept. of Health, 532 U.S. 598, 602, 121 S.Ct. 1835 (2001).   Puerto Rico state law governs this issue in a Court sitting under diversity jurisdiction, where it has been well established that in the absence of a statutory or contractual provision, the prevailing party "may be entitled to attorney's fees ... when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" See Peckham v. Continental Cas. Ins. Co., 895 F.2d 830, 841 (1st Cir. 1990) and Rodríguez-Torres v. Gov't Dev. Bank of Puerto Rico, 708 F.Supp.2d 195, 198 (D.P.R. 2010) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46, 111 S.Ct. 2123 (1991)). Specifically, Rules 44.1(d) and 44.3 of the Puerto Rico Rules of Civil Procedure provide the basis for an award of attorney's fees in this case and permits them only where

a "party or its lawyer has acted obstinately or frivolously." P.R. Laws Ann. tit. 32, App. III, Rule 44.1(d) and Rule 44.3.

For the Court to determine that the losing party has been obstinate, it must find that the party has been "unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation, thereby wasting time and causing the court and the other litigants' unnecessary expense and delay." De León-López v. Corporación Insular de Seguros, 931 F.2d 116, 126-127 (1st Cir. 1991). This seeks to penalize a party whose "stubbornness, obstinacy, rashness, and insistent frivolous attitude has forced the other party to needlessly assume the pains, costs, efforts, and inconveniences of a litigation." Top Entertainment, Inc. v. Torrejón, 351 F.3d 531, 533 (1st Cir. 2003) (quoting Fernández v. San Juan Cement Co., 118 D.P.R. 713, 718 (1987)).

Turning to the case at bar, although the case was litigated in default, the very filing of this case was necessary because Defendant Martínez' actions in filing the state court case. Therefore, the instant case represents the epitome of "pains, costs, efforts, and inconveniences of a litigation", where Plaintiffs were forced to sue Martínez before this Court to clear their names and reputations in an attempt to recover some of the losses Martínez' reckless actions caused them.   Martínez, in turn, hid from the process server, refused to accept service, moved from Puerto Rico and later from the United States, and never appeared in this case.

As such, it is recommended to the Court to find that Defendant Martínez acted obstinately, and for this reason, recommends the award of costs and fees.

Brian Healy, et al., v. José M. Martínez Rivera
Civil No. 18-1754 (JAG)
Report and Recommendation
Page 30

_____

The fees in question were detailed in Feliciano's expert report.    Exhibit 13(b).
Costs associated with Defendant's alleged obstinacy are $85.00 for a process server in
Texas; $112.50 to publish a summons in the Texas newspaper; and $89.70 to publish a
summons in *El Vocero* newspaper. Exhibits 10, 11-A, 12.    Plaintiffs also requested
$400.00 for the filing fee of this case.    Exhibit 13-B, p. 19.    These figures were included
in Feliciano's report, as part of the fees incurred in litigating the cases, for the amount of
$111,469.00, which the undersigned already recommended that they be granted in their
entirety as damages for the malicious prosecution claim discussed at section A, *supra*.

Regarding the punitive damages Plaintiffs seek, although compensatory and
punitive damages are usually awarded at the same time by the same decisionmaker, they
serve different purposes.    Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S.
424, 121 S. Ct. 1678 (2001).    Compensatory damages "are intended to redress the
concrete loss that the plaintiff has suffered by reason of the defendant's wrongful
conduct." Id. (*citing* Restatement (Second) of Torts § 903, pp. 453–454 (1979)).
Punitive damages serve a broader function, as they are aimed at deterrence and
retribution.    Cooper Industries, 532 U.S. at 432; see also BMW of N. Am., Inc. v. Gore,
517 U.S. 559, 568, 116 S. Ct. 1589, 1595 (1996) ("Punitive damages may properly be
imposed to further a State's legitimate interests in punishing unlawful conduct and
deterring its repetition"); Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 19, 111 S.Ct. 1032
(1991) ("[P]unitive damages are imposed for purposes of retribution and deterrence").

Notwithstanding Defendant Martínez' conduct, it is recommended to the Court not

to award punitive damages in this case.   This recommendation is made being mindful of the Supreme Court's guidance on this matter, when it noted that "...defendants subjected to punitive damages in civil cases have not been accorded the protections applicable in a criminal proceeding. This increases our concerns over the imprecise manner in which punitive damages systems are administered".   State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 417, 123 S. Ct. 1513, 1520 (2003).

One of the elements that the Court must consider in making a punitive damages award is the degree of reprehensibility of the defendant's conduct. Gore, 517 U.S., at 575, 116 S.Ct. 1589.   Although Defendant in this case wrongly brought suit against Plaintiffs in state court, it cannot be said that the conduct was reprehensible enough to award more than the amount of compensatory damages already recommended.

In sum, Plaintiffs met their burden to prove each element of malicious prosecution and libel. As such, the following recommendations are made to the Court:

1. Plaintiffs' motion for default judgment be granted.

2. No damages be awarded to Circo Group for loss of business, insofar as Circo Group has already been fully compensated in the Colón case, Civil No. 16-2498 (CCC).

3. Plaintiffs Healy and Lee Andrade be awarded an amount for emotional pain and suffering for malicious prosecution and libel for both Plaintiffs, as well as costs and attorney's fees.

4. No punitive damages be awarded.

## CONCLUSION

For the aforementioned reasons, it is recommended to the Court that Plaintiffs' motion for default judgment (Docket No. 38) be GRANTED.

Furthermore, it is recommended to the Court to make a finding that Defendant Martínez is liable to Plaintiffs Healy and Lee Andrade for malicious prosecution, libel, costs and attorney's fees.

Consequently, it is recommended that damages be awarded in the following amounts:

    a.  No amount in damages to Circo Group for loss of business;

    b.  $20,000.00 to Plaintiff Healy for malicious prosecution;

    c.  $25,000.00 Plaintiff Lee Andrade for malicious prosecution;

    d.  $20,000.00 to Plaintiff Healy for libel;

    e.  $20,000.00 to Plaintiff Lee Andrade for libel;

    f.  $66,969.00 to Plaintiff Circo Group for attorney's fees;

    g.  $44,500.00 to Plaintiff Healy for attorney's fees.

    h.  No amount for punitive damages.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation.  *See*, 28 U.S.C. Sec. 636(b)(1); Fed. R. Crim P. 59 (b)(2); Fed. R. Civ. P. 72(b); and Puerto Rico Local Rule 72(d).   Failure to file same within the specified time waives the right to appeal this order. Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168

Brian Healy, et al., v. José M. Martínez Rivera
Civil No. 18-1754 (JAG)
Report and Recommendation
Page 33
_____

(1st Cir. 2016); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Paterson-

Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988).

     In San Juan, Puerto Rico, on this 26th day of May 2022.

                    S/CAMILLE L. VELEZ-RIVE
                    CAMILLE L. VELEZ RIVE
                    UNITED STATES MAGISTRATE JUDGE